CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 10 2012

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GLENN MCBRIDE, | ) | Civil Action No.: 7:12-cv-344 |
| | ) | |
| Plaintiff, | ) | Memorandum Opinion |
| v. | ) | |
| | ) | Hon. James C. Turk |
| TULLY RINCKEY, PLLC, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's Motion to Dismiss. ECF No. 7. In this legal malpractice case, Plaintiff alleges that he was forced to settle his medical malpractice claim against the Department of Veterans Affairs for an unreasonably low amount because of Defendant's actions. The Defendant law firm first agreed to represent him, only to later withdraw after the firm fired the partner responsible for his case and concluded that the partner's replacement in McBride's case was not competent to prosecute the case. For the reasons that follow, the Defendant's motion is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff, Glenn McBride, was allegedly the victim of medical malpractice at the Department of Veterans Administration ("VA") hospital in Salem, Virginia in 2009 and 2010. To pursue a medical malpractice claim against the VA, he retained the law firm Tully Rinckey, PLLC, based in Albany, New York ("Tully Rinckey" or "the Firm"). His initial contact with the Firm was on or about June 2010 and he signed the written retainer agreement on July 29, 2010.

1

ECF No. 1, Compl. ¶ 7. Tully Rinckey partner Scott Peterson was the attorney assigned to Mr. McBride's case and he acted in that capacity for approximately eight months.

After eight months had passed, Plaintiff received a letter from the firm dated March 25, 2011 stating that Mr. Peterson had been terminated for cause and that another partner, Douglas Rose, would be taking over the case. ECF No. 1-6, Matthew Tully Letter to Glenn McBride, at 1. In that letter, Mr. McBride was assured that Mr. Rose was qualified to handle his case: "Doug is experienced in the type of case we are handling for you and I am confident that the level of professional service you receive from Doug will equal or exceed what you have previously received in your case." Id. McBride apparently heard nothing else from the firm until he received a letter dated July 1, 2011 that stated—contrary to the March 2011 letter that trumpeted the qualifications of Doug Rose—that after the departure of Mr. Peterson, the firm no longer had a qualified attorney to prosecute the claim and they were thus withdrawing from representing him. ECF No. 1-7, Steven Herrick Letter to Glenn McBride, at 1.

Significant to McBride's present legal malpractice claims is the operation of the Federal Tort Claims Act ("FTCA"), under which he sued the VA for medical malpractice. There are two limitations periods under the FTCA: (1) a plaintiff must file an administrative claim with the agency that caused the injury within two years of the injury; and (2) a plaintiff must file suit within six months of the agency's final denial of the claim. 28 U.S.C. § 2401(b). Expiration of the six month agency review period without a final agency disposition is deemed a final denial under 28 U.S.C. § 2675(a). McBride served notice of the medical malpractice claim on the VA in October of 2010 and the six month agency review period was set to expire in April 2011. Complaint at 2, McBride v. United States, No. 7:11-cv-00519 (W.D. Va. Nov. 3, 2011). On April 20, 2011, McBride offered the VA an additional 45 days to complete the agency review,

which the VA accepted. Id. When the 45-day extension passed without agency action on or about June 5, 2011, id., McBride then had six months, until about December 5, 2011, to file suit in federal district court.

Plaintiff filed his medical malpractice case against the VA *pro se* on November 3, 2011, and eventually settled the claims on May 31, 2012 for $4,500. See McBride v. United States, No. 7:11-cv-00519 (W.D. Va.) (ECF Nos. 1 & 88).

In this legal malpractice case, McBride pleads four claims: (1) a legal malpractice tort claim, (2) a breach of contract claim for breach of the Engagement Agreement, (3) intentional and negligent misrepresentation, and (4) intentional and negligent infliction of emotional distress.

## II. LEGAL STANDARDS

To properly state a claim upon which relief can be granted, Plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "It requires the Plaintiff to articulate facts, when accepted as true, that 'show' that the Plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Ashcroft, 556 U.S. at 678). The Court may rely on exhibits attached to the Complaint without converting the motion to dismiss into a motion for summary judgment. See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009); see also 5B Charles Alan Wright & Arthur P. Miller, Federal Practice and Procedure § 1357 (3d ed. 2012).

3

## III. CHOICE OF LAW

Before the Court proceeds to the merits, it must first determine the applicable law in this diversity action. As the Court sits in Virginia, Virginia's choice of law rules provide the framework for this analysis. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

As to Plaintiff's breach of contract claim, "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances . . . ." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (citing Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999)); see also Hooper v. Musolino, 364 S.E.2d 207, 211 (Va. 1988); Tate v. Hain, 25 S.E.2d 321, 324 (Va. 1943). In other words, the choice of law clause will be enforced if the selected state's law "is reasonably related to the purpose of the agreement." Hooper, 364 S.E.2d at 211. Here, it is undisputed that the Engagement Agreement specified that New York law would apply. See ECF No. 1-1, Engagement Agreement, at 4 ("The terms and provisions of this Agreement shall be construed and governed in accordance with the laws of the State of New York."). Since one of the parties resides in New York and most of the legal work related to Mr. McBride's claim was performed in New York, the Court finds that New York law is reasonably related to the purpose of the Agreement: to provide legal representation for Mr. McBride's claim against the VA. Therefore, the Court finds that New York law applies to the contract claim.

The tort claims, however, require the application of Virginia law. "Under Virginia choice of law principles, tort claims are analyzed under the law of the place of the wrong." Waterside Capital Corp. v. Hales, Bradford & Allen, LLP, No. 2:05CV727, 2007 WL 2254661, at *4-5 (E.D. Va. Aug. 3, 2007) (citing Jones v. R.S. Jones & Assoc., Inc., 431 S.E.2d 33, 34 (Va. 1993)), aff'd, 319 F. App'x 263 (4th Cir. 2009). "The place of the wrong is defined as the place

4

where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of the last event." Waterside, 2007 WL 2254661, at *4-5 (citing Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986)). For example, the last event necessary to make an actor liable in a fraud case is the reasonable reliance on the false representation. Waterside, 2007 WL 2254661, at *4-5. Here, Virginia law applies to Plaintiff's tort claims because, for each claim, the last event necessary to make the Defendant liable occurred in Virginia. For the legal malpractice claim and the intentional infliction of emotional distress claims, injury is the last event necessary to make an actor liable and McBride's alleged injury occurred in Virginia. Since misrepresentation is a type of fraud, Waterside provides that the last event was reasonable reliance, but even if the last event was injury, both the reasonable reliance and injury occurred in Virginia. See id. Thus, the Court finds that Virginia law is applicable to the tort claims.

## IV. ANALYSIS

### A. Tort Claims

Virginia law is clear that "in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" Augusta Mut. Ins. Co. v. Mason, 645 S.E.2d 290, 293 (Va. 2007); see also O'Connell v. Bean, 556 S.E.2d 741, 743 (Va. 2002); Richmond Met. Auth. v. McDevitt St. Bovis, Inc., 507 S.E.2d 344 (Va. 1998); Foreign Mission Bd. v. Wade, 409 S.E.2d 144, 148 (Va. 1991); Kamlar Corp. v. Haley, 299 S.E.2d 514, 517 (Va. 1983); Oleyar v. Kerr, 225 S.E.2d 398, 399 (Va. 1976); Spence v. Norfolk & W. R.R. Co., 22 S.E. 815, 818 (Va. 1895). In other words, if a duty arises solely from a contract, then the tort claims must be dismissed and the plaintiff must proceed on the contract claim alone. See Oleyar, 225 S.E.2d at 399 ("If the cause of

5

Case 7:12-cv-00344-JCT   Document 21   Filed 12/10/12   Page 5 of 9   Pageid#: 159

complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort."). Specifically, the Supreme Court of Virginia has stated that duties between a client and an attorney arise solely from the contractual attorney-client relationship. See O'Connell, 556 S.E.2d at 743 ("But for the contract, [the attorney] would have had no duties to [the client]. Whatever duties [the attorney] owed [the client] arose from their attorney-client relationship, which was created by their contract.") (citing Lyle, Siegel, Croshaw & Beale v. Tidewater Capital Corp., 457 S.E.2d 28, 32 (Va. 1995)).

In this case, the Complaint does not, and cannot, allege the violation of any common law or statutory duty that did not arise from the contractual relationship of the parties. Before McBride signed the Engagement Agreement on July 29, 2010, the Firm owed McBride no duty with regards to McBride's claims—all duties arose from their contractual relationship. As such, the Court dismisses Claims 1, 3, and 4. See Oleyar, 225 S.E.2d at 399.

### B. Breach of Contract Claim

Under New York law, Plaintiff is required to establish "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 921 N.Y.S.2d 260, 264 (N.Y. App. Div. 2011). There is no dispute about the existence of a contract and Plaintiff's performance under the contract. As to the latter point, even if there were a dispute, Plaintiff alleges that he "performed all duties in accordance with the terms and conditions set forth in the attorney-client contract." ECF No. 1, Compl. ¶ 31. The parties vigorously dispute the final two elements.

6

Assuming that McBride can show that the Firm breached a written or oral contract for legal representation, McBride still has not plausibly plead the final element, "that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages," Von Duerring v. Hession & Bekoff, 896 N.Y.S.2d 424, 425 (N.Y. App. Div. 2010). This is because after the termination of the Agreement by the firm, there were five months before the limitations period ran and eleven months before Plaintiff eventually settled the case against the VA. In this time, he could have obtained new counsel to represent him. Instead, Defendant argues, he voluntarily chose to file suit *pro se* four months after the Firm terminated the Agreement and a month before the limitations period ran. Plaintiff counters this argument by stating that he relied on his being represented by Tully Rinckey "to the exclusion of all others," see ECF No. 14, Pl.'s Resp. Opp. Mot. Dismiss at 5, and that it is difficult to have a new lawyer "enter a case midstream," id. at 8, and that a new lawyer would be reluctant to take on a case where the previous lawyer had withdrawn. Id.

Since New York law governs this claim, the Court looks to the New York state courts for guidance. The cases generally support the proposition that there is no proximate causation on a legal malpractice claim when the alleged deficient representation terminates with sufficient time to enable successor counsel to adequately protect the client's rights. See Albin v. Pearson, 734 N.Y.S.2d 564, 565 (N.Y. App. Div. 2001) (finding no proximate cause where claim remained viable for three years after the firm was discharged); Golden v. Cascione, Chechanover & Purcigliotti, 729 N.Y.S.2d 140, 141 (N.Y. App. Div. 2001) (finding no proximate causation because the claim remained viable for two and a half years after firm was relieved); Kozmol v. Law Firm of Allen L. Rothenberg, 660 N.Y.S.2d 63, 64 (N.Y. App. Div. 1997) (no proximate cause because even though lawsuit was dismissed without prejudice because of firm's error, it

7

could have been refiled within 120 days and was not); C & F Pollution Control Inc. v. Fid. & Cas. Co. of N.Y., 653 N.Y.S.2d 704, 705 (N.Y. App. Div. 1995) (finding no proximate causation in an automobile accident case when the successor counsel had six months remaining on the statute of limitations after receiving the plaintiff's file); Sherotov v. Capoccia, 555 N.Y.S.2d 918, 919 (N.Y. App. Div. 1990) (holding that since one month remained on the statute of limitations when the representation was terminated, no proximate cause could be had in a legal malpractice claim on an underlying medical malpractice case).

Based on this precedent, particularly the Sherotov case, Plaintiff is unable to demonstrate that the Firm's breach was a proximate cause of the injury he alleges he suffered—being forced to settle his claim for an unreasonably low amount. Plaintiff still had five months after Tully Rinckey terminated representation before the limitations period ran on his claim. In Sherotov, in which the underlying claim was also a medical malpractice case, even one month's time before the statute of limitations ran was sufficient time to abrogate the effects of the defendant's breach. While McBride's case may have been more complicated than in Sherotov, five months is a sufficient amount of time in which to retain counsel and for that counsel to file a complaint. Indeed, four months after the breach, Mr. McBride himself filed a detailed and well-reasoned *pro se* complaint. Even after the complaint had been filed, Mr. McBride was able and free to engage counsel to represent him throughout the remainder of the litigation.

Because Plaintiff cannot allege that the Defendant's breach was a proximate cause of his injury, his breach of contract claim fails. Accordingly, the Court dismisses the claim.

V. CONCLUSION

Plaintiff's tort claims must be dismissed because any duty Defendant owed Plaintiff arose solely from their contract. The Plaintiff's breach of contract claim must be dismissed because the

8

Plaintiff cannot show that the breach was the proximate cause of the injury he suffered. The Court **GRANTS** the Defendant's Motion to Dismiss in its entirety and the case is **DISMISSED WITH PREJUDICE**.

An appropriate order shall issue this day.

ENTER: This 10th day of December, 2012.

Hon. James C. Turk
Senior United States District Judge